IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 17, 2019

## STATE OF TENNESSEE v. LARRY JOE CARROLL, AKA LARRIE CARROLL

**Appeal from the Criminal Court for Davidson County**
**No. 2017-B-1319     Cheryl A. Blackburn, Judge**

_____

### No. M2017-02508-CCA-R3-CD

_____

Following a bench trial, Larry Joe Carroll ("Defendant") was convicted of criminal trespass, criminal simulation valued at $1,000 or less, and criminal impersonation, for which he received an effective sentence of two years to serve in the Tennessee Department of Correction. On appeal, Defendant challenges the sufficiency of the evidence as it relates to his convictions for criminal simulation valued at $1,000 or less and criminal impersonation. Following a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and TIMOTHY L. EASTER, JJ., joined.

Martesha L. Johnson, District Public Defender; and Emma Rae Tennent (on appeal) and Julia Bigsby (at trial), Assistant District Public Defenders, for the appellant, Larry Joe Carroll.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Glenn Funk, District Attorney General; and Doug Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

At trial, Shane Lunenschloss testified that he was the operations manager for Premier Parking ("Premier") in downtown Nashville. Mr. Lunenschloss explained that Premier owned a parking lot that covered four parcels of land in the area of 2nd Avenue and Broadway. He stated that parking at those locations was sold only through a digital parking meter and that Premier never staffed the lot with employees taking cash for parking. He explained that patrons of the lot would receive a ticket from the digital meter but that it was not necessary for patrons to display their tickets in parked vehicles. Premier utilized an "enforcement team" to check the parking lots to make sure people that are parking there have paid and to write parking violations. Mr. Lunenschloss stated that parking at the 2nd Avenue and Broadway location cost "$12 and up" and that the parking lot had posted signage that read, "[N]o trespassing, no loitering, no free parking, no in and outs."

On April 5, 2017, Mr. Lunenschloss and his supervisor, Owen Sanford, pulled into the 2nd Avenue and Broadway parking lot to check the location and saw Defendant standing in another Premier lot referred to as the "Pesca lot," located across 2nd Avenue, holding a booklet of tickets. They attempted to get a photograph of Defendant with the ticket booklet and parked in the lot. Before they could get out of the car, Defendant approached them with the ticket booklet. The ticket booklet was a PMC valet ticket booklet. Ms. Sanford took a photograph of Defendant, and Defendant "took off." Mr. Lunenschloss testified that PMC did not have permission to be issuing valet tickets in Premier's parking lots that day. Ms. Sanford went around and took photographs of "at least one vehicle" that had a claim ticket displayed in the dashboard while Mr. Lunenschloss called police. The State introduced a photograph of Defendant in the parking lot holding the valet ticket booklet and a photograph of a vehicle parked in the lot with a valet claim ticket displayed on the dashboard.

Officer Charles Embry with the Metro-Nashville Police Department testified that he was patrolling downtown Nashville on April 6, 2017. Another officer informed Officer Embry that there was a warrant that needed to be served on Defendant. As Officer Embry was coming down 1st Avenue, he saw Defendant walking from 2nd Avenue towards 1st Avenue. Officer Embry stopped Defendant, asked for his identification, and confirmed Defendant's identity. Officer Embry estimated that Defendant was 200 to 300 feet away from the 2nd Avenue and Broadway parking lot. Officer Embry took Defendant into custody. Upon searching Defendant, Officer Embry found a PMC valet ticket booklet, which he seized. Officer Embry estimated that the valet ticket booklet had twenty to twenty-five tickets missing from it. Defendant also had "some money on him[,]" but Officer Embry did not seize the money.

- 2 -

Upon deliberation, the trial court found Defendant guilty as charged. The trial court determined:

We have three different crimes here. And the testimony I heard, most particularly from the witness from Premier Parking, is they have lots downtown on 2nd Avenue, several of them, and that they're very specific about how that works. You have to put your money in a meter kind of thing. But it's controlled electronically, and then they check on those things pretty easily. But in those particular lots they do not allow the valet parking. They do have a contract or at least this PMC does do that in some of their other lots so that all they do is if it's valet parking, they give them a ticket and they put it in the windshield. But those lots are not covered by that because they don't do it on those particular lots I think his testimony was. He very specifically said he's familiar with the employment, he saw a PMC valet booklet of tickets that he's very familiar with. But they do not have permission on those two locations where he was. He saw [Defendant] with a PMC valet booklet. And they pull into the lot, according to him, [Defendant] comes over to them, and he has this booklet in his hand. And they, of course, happen to know -- they take a picture of him, and they happen to know that there's no valet parking. And then they discover there is a valet kind of sticker in one of their cars.

So let's look at -- though it is circumstantial[,] [Defendant] clearly didn't work for Premier, and PMC [] didn't have any business to be on those lots in the first place.

So we'll first take up criminal trespass. A person who commits criminal trespass is a person enters or remains on property or any portion of the property without the consent of the owner. And then it says consent may be inferred in the case of property that is used for commercial activity available to the general public or in the case of other property when the owner has communicated his intent to be open to the public. However the defenses to that would be that the conduct did not substantially interfere with the owner's use of the property and he immediately left the premises. But then there's this other little section that says, the defenses shall not be applicable to someone if the property owner posts the property with signs that are visible at all major points of egress on the property and posted and the signs are reasonably and likely to come to the attention of the person entering the property. So you don't have the defense when these signs are clearly posted, which we saw pictures that they are, and he testified that

- 3 -

these are posted about trespass.  So I'm going to find [Defendant] guilty of criminal trespass.

Now, criminal simulation is what we've been discussing.  It commits the crime with intent to defraud if you either make or alter the object, you possess an object so made or altered with the intent to pass or sell.  And then there's another section for which you have knowledge of its character, possesses any instrument adapted or used for the commission of any theft of property or services by fraudulent means.  So under that section [Defendant] possessed an instrument which it was adapted or used to commit a theft.  And what he did was he used it as a valet ticket to give to somebody to let them think they could park there.  And ultimately the theft of property or services would be from Premier because they couldn't then use that parking lot for legitimate -- that parking space.  So I'm going to find him guilty of that.  I think the State has proven that.

Then we have the criminal impersonation, with intent to injure or fraud another, assumes a false identity, pretends to be a representative of some other person or organization, . . . so he pretended to be a representative of some other person or organization.  And that is from the fact that they have a picture of [Defendant] representing -- having in his hand this ticket booklet and then they see a ticket on their car.  So I think the State has carried its burden beyond a reasonable doubt on all three of those crimes.  So I'm going to find [Defendant] guilty.

Following a sentencing hearing, the trial court ordered Defendant to serve thirty days for criminal trespass, six months for criminal impersonation, and two years with a thirty-percent release eligibility for criminal simulation valued at $1,000 or less.  The trial court ordered all sentences to run concurrently.  Defendant filed a timely motion for new trial, which the trial court denied.  This timely appeal follows.

## Analysis

Defendant contends that the evidence presented at trial was insufficient to support convictions for criminal simulation valued at $1,000 or less and criminal impersonation. He argues that the State presented no testimony from the driver of the vehicle with the displayed claim ticket concerning when and under what circumstances the driver acquired the ticket.  He further asserts that the State presented no proof that he sold a ticket from the booklet to any patron in the lot, that he "stated a false identity to anyone[,]" or that he "wore a badge, shirt, hat, or other item indicating that he worked for Premier Parking."  Defendant contends that his convictions are based upon a series of

inferences and cannot stand. The State responds that the evidence is sufficient to support Defendant's convictions. We agree with the State.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

As relevant here, "[a] person commits the offense of criminal simulation who, with knowledge of its character, possesses . . . [a]ny instrument, apparatus or contrivance designed, adapted or used for commission of any theft of property or services by fraudulent means." Tenn. Code Ann. § 39-14-115(a)(2)(B) (2017). "Criminal simulation is punishable as theft pursuant to [Tennessee Code Annotated section] 39-14-105, but in no event shall criminal simulation be less than a Class E felony." Tenn. Code Ann. § 39-14-115(b) (2017). "A person commits criminal impersonation who, with intent to injure or defraud another person[] . . . [p]retends to be a representative of some person or organization[.]" Tenn. Code Ann. § 39-16-301(a)(2) (2017).

When viewed in the light most favorable to the State, the evidence established that Defendant possessed the PMC valet ticket booklet, which he used to fraudulently sell parking to a patron of the Premier parking lot, thereby committing a theft of services. Mr. Lunenschloss testified that, on April 5, 2017, he saw Defendant standing in a parking lot owned by Premier with a PMC valet ticket booklet in his hand. Mr. Lunenschloss stated that Premier charged "$12 and up" for parking at that location. As soon as Mr. Lunenschloss and Ms. Sanford pulled into the parking lot, Defendant approached them with the ticket booklet. Mr. Lunenschloss was familiar with PMC valet ticket booklets and knew that PMC did not have permission to be operating in the parking lot that day.

Ms. Sanford photographed Defendant holding the ticket booklet, and as Mr. Lunenschloss called police, Defendant fled the scene. Ms. Sanford then photographed "at least one vehicle" in the parking lot that had a PMC valet ticket displayed on its dashboard. The following day, Officer Embry arrested Defendant and found him in possession of a booklet of PMC valet tickets. He also had cash in his possession. Officer Embry stated that the valet ticket booklet had twenty to twenty-five tickets missing from it. The evidence is sufficient for a rational fact finder to conclude that Defendant was guilty of criminal simulation valued at $1,000 or less when he possessed the PMC valet ticket booklet in order to collect money from patrons of Premier's parking lot without paying Premier for the use of the lot.

We further conclude that the evidence is sufficient to support Defendant's conviction for criminal impersonation. Defendant held himself out as a representative of a valet parking company that had authority to operate in the Premier's parking lot that day when Defendant had no such authority. Mr. Lunenschloss testified that when he and Ms. Sanford parked in Premier's lot, Defendant approached them holding a PMC valet ticket booklet. Ms. Sanford photographed "at least one" of the vehicles parked in the lot with the same valet ticket displayed on its dashboard, and Defendant was later found in possession of the valet ticket booklet and money by Officer Embry. Mr. Lunenschloss testified that Defendant did not have permission to be in Premier's parking lot or to sell parking to patrons of the lot.

Finally, we agree with the State that the trial court did not improperly draw an inference from an inference. Any inferences drawn regarding whether patrons paid Defendant and whether they had not paid Premier were properly drawn from the evidence. Patrons of Premier's parking lot were supposed to pay for their parking at a digital kiosk. Premier never staffed its lots to allow people to pay with cash, and neither Defendant nor PMC had permission to operate in Premier's lot that day. Defendant fled from the lot when confronted by Mr. Lunenschloss and Ms. Sanford, and he had cash and the valet ticket booklet in his possession when he was arrested. From these facts, the trial court could conclude that Defendant sold valet tickets to patrons without paying Premier for the use of its parking lot. Defendant is not entitled to relief.

## Conclusion

For the aforementioned reasons, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE